# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GRAY MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-399-CVE-TLW |
| | ) |
| LOVEWORLD LIMITED, | ) |
| LOVEWORLD TV, LLC, | ) |
| CHRIST EMBASSY INTERNATIONAL, | ) |
| and CHRIST EMBASSY LIMITED, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court are the following motions: the Motion to Dismiss of Defendants LoveWorld Limited and Christ Embassy Limited for Failure to State a Claim upon which Relief Can Be Granted and Brief in Support (Dkt. # 17); Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Brief to Support (Dkt. # 18); Defendants' Motion to Dismiss for Failure to Join a Necessary Party and Brief in Support (Dkt. # 19); Defendants' Motion to Dismiss for Improper Venue and Brief in Support (Dkt. # 20); and Defendants' Motion to Transfer Venue and Brief in Support (Dkt. # 21).

### I.

In approximately September 2009, an employee of Gray Media, LLC (Gray Media), Gabe Harris, contacted the president of LoveWorld TV, LLC (LoveWorld TV) and Christ Embassy International (Christ Embassy), Eustace Okoeka,[1] to discuss the possibility that Gray Media could

---

[1] In this Opinion and Order, the Court will refer to Eustace Okoeka as "Okoeka," and his wife, Famesha Okoeka, will be referred to by her full name.

provide services to Christ Embassy Churches and Pastor Chris Oyakhilome. Dkt. # 18, at 25; Dkt. # 27-1, at 1. Gray Media offered to assist LoveWorld TV and Christ Embassy with broadcasting Oyakhilome's television programs in the United States. Dkt. # 27-1, at 2. Harris sent Okoeka an e-mail stating that "Gray Media helps ministries maximize response through television by helping them select networks and time periods that best fit their audience, and by saving them money on airtime." Dkt. # 18, at 25. Gray Media is a limited liability company organized under the laws of Oklahoma and it maintains its principal place of business in Tulsa, Oklahoma. LoveWorld TV and Christ Embassy are entities organized under the laws of the state of North Carolina. Dkt. # 18, at 21. Gray Media claims that LoveWorld TV operates internationally, including in the State of Oklahoma. Dkt. # 2, at 8. Okoeka represented to Harris that he was authorized to serve as the agent of Oyakhilome and Christ Embassy Churches in the United States. Dkt. # 27-1, at 1. Okoeka also told Harris that Oyakhilome was the head of Christ Embassy Churches and the LoveWorld TV networks. Id. at 2.

From September 2009 to February 2012, Okoeka and Harris exchanged at least 30 e-mails and spoke on the telephone at least nine times. Id. at 2; Dkt. # 18, at 25-36. These communications were focused on the possibility of airing Oyakhilome's programs on television in the United States. Dkt. # 27-1, at 2. During a telephone call on February 23, 2012, Okoeka asked Harris if Gray Media could "license" Oyakhilome's programs on LoveWorld TV for broadcast in the United States. Id. Harris spoke to his manager, Tim Gray, as to whether Gray Media could provide this service, and Harris advised Okoeka that Gray Media could license programming in the United States. Id. at 3. Harris had a telephone conference with Okoeka and his wife, Famesha Okoeka, to discuss the costs of beaming a television signal from Europe to the United States, and Harris e-mailed Okoeka with

information about the requirements for providing this service. Id. From March to May 2012, Gray Media negotiated with LoveWorld TV and Christ Embassy as to the terms of a TV Satellite and Distribution Agreement (the Agreement), and Okoeka signed the Agreement on behalf of LoveWorld TV and Christ Embassy. Id. at 17; Dkt. # 27-2, at 2. The signature block on the Agreement identifies the parties represented by Okoeka as "Christ Embassy (Charlotte NC)/LoveWorld TV." Dkt. # 18, at 39. Famesha Okoeka advised Harris that she would "speak with our UK office" about payment arrangements, but she did not request that Christ Embassy Limited (CEL) or LoveWorld Limited be made parties to the contract. Dkt. # 27-1, at 19. She also told Harris that any invoices should reference LoveWorld TV as the payor, instead of Christ Embassy, and she provided a mailing address in London. Id. at 4. LoveWorld TV submitted some payments after the Agreement was executed, and Gray claims that the payments were actually made by LoveWorld Limited. Dkt. # 27-2, at 3. LoveWorld Limited and CEL are entities organized under the laws of the United Kingdom. Id. at 12.

On April 15, 2014, Gray Media filed this case alleging that LoveWorld TV, LoveWorld Limited, Christ Embassy, and CEL breached the Agreement by failing to make payments and by anticipatorily repudiating the agreement. Dkt. # 2, at 9. Gray Media also alleges a quantum meruit claim. Id. at 10. Gray Media seeks damages in the amount of $665,602.39 and prejudment interest. Id. at 10-11. Gray Media's petition refers to the defendants collectively and it does not identify any specific action allegedly taken by any defendant. Defendants removed the case to this Court on the basis of diversity jurisdiction.

## II.

### A.

Defendants argue that they are not subject to personal jurisdiction in Oklahoma, because they do not have sufficient contacts with the state to support the exercise of general personal jurisdiction over them. Dkt. # 18, at 7-8. They also argue that any business relationship with plaintiff was initiated by plaintiff and the contract was executed in North Carolina, and the Court should decline to exercise specific personal jurisdiction over them. Id. at 9-14. Plaintiff responds that the parties had an extended business relationship and defendants entered a contract with an Oklahoma resident, and defendants should have reasonably foreseen being haled into court in Oklahoma if a dispute arose out of that business relationship. Dkt. # 27, at 8-12.

As to defendants' motions to dismiss for lack of personal jurisdiction, plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendants. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431

4

(10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. Id.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. at 1247 (quoting Burger King

5

Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. at 1247 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)).

The Court finds that it lacks general personal jurisdiction over defendants, because there is no evidence that defendants had regular and consistent contacts with Oklahoma outside of its business relationship with plaintiff. In order for the Court to exercise general personal jurisdiction over a party, the plaintiff must show that "a nonresident party has 'continuous and systematic general business contacts with the forum state . . . .'" Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013). A party's "commercial contacts . . . must be of a sort 'that approximate physical residence' in the state'--and 'engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." Shrader v. Biddinger, 633 F.3d 1235, 1243 (10th Cir. 2011) (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)). In this case, defendants have submitted the affidavit of Okoeka establishing that defendants do not generally conduct business in Oklahoma and they do not maintain any type of corporate presence in this state, and plaintiff has not submitted any evidence to contradict Okoeka's statements. Dkt. # 18, at 20-23. The evidence shows that defendants' sole contact with Oklahoma was its business relationship with plaintiff and, by itself, this is not a sufficient basis to exercise general personal jurisdiction over defendants.

For a court to exercise specific jurisdiction over a nonresident defendant, a plaintiff must show that "the defendant has 'purposefully availed itself of the privilege of conducting activities or

6

consummating a transaction in the forum state'" and that "the litigation results from alleged injuries that arise out of or relate to those activities." Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1160 (10th Cir. 2010). The existence of an agreement or contract, standing alone, may not be enough to justify the assertion of personal jurisdiction over a non-resident defendant, but "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1166 (10th Cir. 2011). In a contract case, a court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1058 (10th Cir. 2008). The mere presence of one of the contracting parties in the forum state may not be enough to support the exercise of personal jurisdiction over a non-resident defendant, and the "contract relied upon to establish minimum contacts must have a 'substantial connection' with the forum state." TH Agriculture & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1292 (10th Cir. 2007).

Defendants argue that plaintiff initiated the business relationship when Harris reached out to LoveWorld TV and Christ Embassy about the possibility of broadcasting Oyakhilome's programming in the United States, and they claim that they did not purposefully direct any action to an Oklahoma resident. Plaintiff responds that the parties had a three year relationship before entering a contract, and they assert that the contract was subsequently executed in Oklahoma. As an initial matter, the Court notes that plaintiff treats the defendants as a collective entity for the purpose of personal jurisdiction, but the evidence and plaintiff's allegations show that plaintiff dealt only with LoveWorld TV and Christ Embassy during the contractual negotiations. Dkt. # 27-1; Dkt.

7

# 27-2. There is no evidence that Okoeka claimed to represent LoveWorld Limited or CEL during the negotiation process, and there is no evidence that Harris or Gray believed that they were negotiating with LoveWorld Limited or CEL Dkt. # 18, at 20. Plaintiff argues that LoveWorld Limited and CEL may have assumed responsibility for paying plaintiff at some point after the Agreement was executed, and plaintiff claims that LoveWorld Limited and CEL became parties to the Agreement. Dkt. # 27, at 14. The Court will consider this argument, but these contacts are of a different character than the contractual negotiations between plaintiff and LoveWorld TV and Christ Embassy. Although plaintiff's arguments treat defendants collectively for the purpose of personal jurisdiction, the Court will analyze the issue of personal jurisdiction as to LoveWorld Limited and CEL separately from the personal jurisdiction analysis as to defendants LoveWorld TV and Christ Embassy.

LoveWorld TV and Christ Embassy argue that they did not reach out to an Oklahoma resident to form a business relationship but, instead, plaintiff solicited Loveworld TV and Christ Embassy for several years and plaintiff reached outside of Oklahoma. Dkt. # 18, at 5. There is no dispute that Harris initially contacted Okoeka about plaintiff's services and that plaintiff was responsible for beginning the parties' relationship. Dkt. # 27-1, at 1. Harris states that he exchanged at least 30 e-mails and had nine telephone conversations with Okoeka between September 2009 and February 2012. It appears that most of the e-mails during this time period were sent by Harris in an attempt to encourage Loveworld TV and Christ Embassy to do business with plaintiff. Dkt. # 18, at 25-36. On February 23, 2012, Okoeka made a new inquiry as to whether plaintiff could license Oyakhilome's programming in the United States. Dkt. # 27-1, at 2. After this inquiry, Harris and Okoeka exchanged numerous e-mails and they were actively attempting to negotiate a contract for

8

the licensing and distribution of Oyakhilome's programming in the United States. Id. at 8-19. The parties negotiated an agreement and Harris sent the proposed agreement to Okoeka on April 3, 2012. On May 15, 2012, Okoeka signed the Agreement and returned it to Harris. Id. at 4; Dkt. # 27-2, at 2. Harris and Famesha Okoeka subsequently exchanged e-mails about invoicing LoveWorld TV and Christ Embassy and how payments would be submitted. Id. at 25-26. By October 2012, plaintiff was not receiving payments as required by the Agreement, and plaintiff threatened to cut off services if LoveWorld TV and Christ Embassy did not make a payment by October 31, 2012. Dkt. # 27-2, at 8.

The parties dispute in which state the Agreement was executed, but the Court finds that it is unnecessary for the purpose of the personal jurisdiction analysis to determine where the contract was executed.[2] While the location where the Agreement was executed could be a factor, the more significant issues are "the parties 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Marcus Food Co., 671 F.3d at 1166-67. It is undisputed that plaintiff initiated contact with Okoeka, but the parties had an extended period of negotiations before a contract was signed. Okoeka, acting on behalf of LoveWorld TV and Christ Embassy, knew that he was negotiating with a business located in Oklahoma and he asked plaintiff about the cost of licensing Oyakhilome's programming in the United States. LoveWorld TV and Christ Embassy argue that "[p]laintiff's domicile was never a consideration in the contract with LoveWorld TV." Dkt. # 18, at 14. However, defendants have cited no authority suggesting that a defendant's subjective lack of interest in the plaintiff's domicile

---

[2] This fact will undoubtedly have an impact on the choice of law analysis, but the parties have not raised any issue as to the choice of law in any of the pending motions.

9

weighs against the exercise of personal jurisdiction over a defendant. There were no face-to-face negotiations in this case and none of the defendants ever traveled to Oklahoma, but there was an extensive period of negotiations with an Oklahoma business. The Court has also reviewed the Agreement and the parties agreed that the Agreement was "non-cancelable for 3 years." Dkt. # 18, at 39. This shows that the parties contemplated an extended business relationship after the Agreement was executed. Considering all of the evidence, the Court finds that LoveWorld TV and Christ Embassy purposefully directed their actions toward Oklahoma by negotiating with and entering an extended contract with an Oklahoma business, and these defendants could reasonably foresee being haled into an Oklahoma court if a dispute arose out of the Agreement. The Court finds that it has personal jurisdiction over LoveWorld TV and Christ Embassy.

LoveWorld Limited and CEL argue that they did not negotiate with plaintiff and they were not parties to the Agreement and, even if the Court has personal jurisdiction over LoveWorld TV and Christ Embassy, there is no evidence that LoveWorld Limited or CEL purposefully directed any action toward a resident of Oklahoma. Dkt. # 18, at 15-16. Plaintiff responds that payments were submitted from LoveWorld Limited's office in the United Kingdom and that plaintiff "believed that it was contracting with whatever entity owns and operates [LoveWorld TV] and the Christ Embassy churches . . . ." Dkt. # 27, at 14. The Court has reviewed the evidence submitted by plaintiff and there is no evidence that Okoeka claimed to represent LoveWorld Limited or CEL during the negotiation process. Okoeka is the president of LoveWorld TV and Christ Embassy, and he states that LoveWorld Limited and CEL did not enter a contract with plaintiff. Dkt. # 18, at 20. Harris states that Okoeka "actively negotiated the terms of the agreement between Gray Media and Christ Embassy and LoveWorld TV," but Harris did not form a belief that Okoeka claimed to represent

10

LoveWorld Limited or CEL. Dkt. # 27-1, at 3. In 2009 and 2010, Harris provided quotes for broadcasting LoveWorld TV's programs only in Charlotte, and both LoveWorld TV and Christ Embassy are organized under the laws of North Carolina. Dkt. # 18, at 26-36. Harris and Okoeka negotiated until 2012 and plaintiff sent a proposed licensing agreement to Okoeka in April 2012. Dkt. # 27-1, at 17. Famesha Okoeka advised plaintiff in April 2012 that she would "speak with our UK office" to make payment arrangements, but she did not identify any other entity as the source of the payments. Id. at 3. Harris further states that Okoeka, "on behalf of LoveWorld TV and Christ Embassy, executed the parties' Agreement . . . ." Id. at 4. The signature block on the Agreement clearly identifies the signing entities as "Christ Embassy (Charlotte NC)/ LoveWorld TV." Id. at 24. Plaintiff drafted the Agreement and it clearly knew what entities were signing it. In September 2012, Famesha Okoeka sent Harris an e-mail asking him to correct the invoices to show that payments were owed by LoveWorld TV, rather than Christ Embassy, and this shows a lack of intent to treat LoveWorld Limited and CEL as parties to the Agreement. Id. at 25. Plaintiff has the burden to at least make a prima facie showing that the Court can exercise personal jurisdiction over a defendant. At best, plaintiff has shown that it formed a subjective belief that payments were being submitted by an entity with an office in the United Kingdom. However, it knew that payments would be submitted by the "UK office" in April 2012 and the Agreement was not signed until May 2012, and there is no evidence that plaintiff sought to include the entities located in the United Kingdom as parties to the Agreement. Even if the Court assumes that payments were actually submitted to plaintiff by LoveWorld Limited or CEL, plaintiff has cited no legal authority that this fact standing alone would be sufficient for this Court to exercise jurisdiction over a foreign defendant. The Court finds that plaintiff has not met its burden to show that LoveWorld Limited

or CEL "purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state," and the Court finds that it lacks personal jurisdiction over these parties.³ Employers Mut. Cas. Co., 618 F.3d at 1160.

Even though the Court has found that it has personal jurisdiction over defendants LoveWorld TV and Christ Embassy, the Court must also consider whether the exercise of personal jurisdiction over these defendants "comport[s] with 'fair play and substantial justice.'" Trujillo v. Williams, 465 F.3d 1210, 1221 (10th Cir. 2006) (quoting Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1359 (10th Cir. 1990)). The Court must consider five factors to determine if the exercise of personal jurisdiction over a defendant would be reasonable:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

Id. (quoting Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270, 1279-80 (10th Cir. 2005)). The Tenth Circuit has stated that a defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable" and "[s]uch cases are rare." Rusakiewicz v. Lowe, 556 F.3d 1095, 1102 (10th Cir. 2009). The reasonableness prong of the due process inquiry "evokes a sliding scale," and a defendant may need less to defeat a showing of personal jurisdiction if the plaintiff's showing of minimum contacts is relatively weak. TH Agriculture & Nutrition, LLC, 488 F.3d at 1292.

---

3    Based on the Court's finding that it lacks personal jurisdiction over LoveWorld Limited and CEL, the Court finds that the motion to dismiss for failure to state a claim (Dkt. # 17) filed by these defendants is moot.

LoveWorld TV and Christ Embassy argue that they would be subject to a substantial burden if they are required to litigate in Oklahoma. These defendants state that they are based in Charlotte and all of their employees are based in Charlotte. Dkt. # 18, at 16. By itself, this is not sufficient to show that litigation would be such a burden that it would be unreasonable to require them to defend against plaintiff's claims in this Court. Newsome, 722 F.3d at 1273 (requiring a defendant to travel from Canada to Oklahoma was not such a substantial burden on the defendants for application of the Trujillo factors). As to the second Trujillo factor, defendants could be arguing that the forum state lacks an interest in these proceedings, because the Agreement was not intended to be performed in Oklahoma. Dkt. # 18, at 16. However, plaintiff is located in Oklahoma and defendants entered into a three year contract with an Oklahoma resident, and Oklahoma law may apply to the parties' dispute. These facts are sufficient to show that the forum state has an interest in resolving the dispute. Neither party has offered any argument as to the third Trujillo factor (plaintiff's interest in receiving convenient and effective relief) but there is nothing in the record to suggest that plaintiff's right to recover in a straightforward breach of contract action will be affected if the case were to be transferred to another forum. See OMI Holdings, Inc., 149 F.3d at 1097 (third Trujillo factor focuses on whether the plaintiff will be placed at a disadvantage in terms of the law applied to the case if it were to be heard in another forum). The fourth Trujillo factor "examines whether the forum state is the most efficient place to litigate the dispute." Id. In this case, there will be some inconvenience to one of the parties based on where the case is heard because plaintiff and defendants are located in different states, but defendants have made no attempt to show that it would be more efficient to litigate the case in North Carolina. Finally, the Court must consider the shared interest of the several states. This case does not involve any issue of law in which any state has a

social policy interest, and it is an ordinary breach of contract action involving the alleged non-payment by defendants for services rendered by plaintiff. Id. at 1097-98 (application of the fifth Trujillo factor takes into account the nature of the legal dispute and the substantive social policies of the states). It will not negatively impact the policy interests of North Carolina or any other state if this case is heard in Oklahoma. Weighing all of the Trujillo factors, the Court finds that it is reasonable to require LoveWorld TV and Christ Embassy to defend against plaintiff's claims in Oklahoma.

The Court finds that defendants' motion to dismiss for lack of personal jurisdiction should be denied as to LoveWorld TV and Christ Embassy, but defendants LoveWorld Limited and CEL are not subject to personal jurisdiction in Oklahoma and they should be dismissed as parties to this case.

**B.**

Defendants asks the Court to dismiss the case due to improper venue or to transfer the case to the United States District Court for the Western District of North Carolina. Dkt. ## 20, 21. Plaintiff responds that venue is proper in this Court and defendants have failed to meet their burden to show that transfer of venue is appropriate under 28 U.S.C. § 1404(a).

Under 28 U.S.C. § 1391(b), a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

14

A corporate defendant is "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2). The Court has found that it has personal jurisdiction over LoveWorld TV and Christ Embassy, and these defendants are deemed to reside in the Northern District of Oklahoma. The Court has also found that defendant LoveWorld Limited and CEL should be dismissed as parties. Thus, the two remaining defendants, LoveWorld TV and Christ Embassy, reside in the same judicial district and venue is appropriate under § 1391(b)(1). Defendants' motion to dismiss due to improper venue (Dkt. # 20) should be denied.

If the Court finds that venue is proper, defendants ask the Court to transfer this case to the Western District of North Carolina. Dkt. # 21. As to defendants' motion to transfer venue under 28 U.S.C. § 1404, defendants bear the burden to establish that plaintiff's chosen forum is inconvenient, and plaintiff's choice of forum is given considerable weight. <u>Scheidt v. Klein</u>, 956 F.2d 963, 966 (10th Cir. 1992). A court should not transfer venue merely to shift the inconvenience of litigating from one party to another, and the party seeking a transfer of venue must make a strong showing that the forum is inconvenient. <u>Employers Mut. Cas. Co. v. Bartile Roofs</u>, 618 F.3d 1153, 1168 (10th Cir. 2010). When reviewing a motion to transfer venue under § 1404, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. <u>Huang v. Napolitano</u>, 721 F. Supp. 2d 46, 48 n.3 (D.D.C. 2010); <u>United States v. Gonzalez & Gonzales Bonds and Ins. Agency, Inc.</u>, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010).

Under 28 U.S.C. § 1404(a), a court may transfer a case to any judicial district in which it could originally have been filed "[f]or the convenience of parties and witnesses." The Tenth Circuit

has identified several factors that should be considered by a district court in ruling on a motion to transfer:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991). When a party files a motion to transfer venue, the moving party has the burden to prove inconvenience to the parties and witnesses. Rivendell Forest Prods., Ltd., v. Canadian Pacific Ltd., 2 F.3d 990, 993 (10th Cir. 1993). Unless the moving party carries its burden to prove inconvenience to the parties and witnesses and the balance is "strongly" in favor of the moving party, the plaintiff's choice of forum should not be disturbed. Scheidt, 956 F.2d at 965.

Defendants provide no analysis of the Chrysler Credit factors and their two page motion simply argues that venue should be transferred if the Court finds that it lacks personal jurisdiction or venue over this case. Dkt. # 21, at 1-2. The Court has already found that it has personal jurisdiction over LoveWorld TV and Christ Embassy and that venue is proper in this Court. Plaintiff resides in this judicial district and plaintiff's choice of forum is entitled to significant weight. Employers Mut. Cas. Co., 618 F.3d at 1167-68 (a plaintiff's choice of forum could be given less weight if the plaintiff does not reside in the chosen forum). Defendants have identified no concerns about the accessibility of witnesses or difficulties relating to discovery if the case proceeds in this Court. None of the parties has suggested that a judgment entered by this Court against LoveWorld TV or Christ Embassy would be unenforceable. Although the parties have not raised any issue

concerning the choice of law, plaintiff has cited Oklahoma law in support of its breach of contract and quantum meruit claims and this Court would have more familiarity with Oklahoma law than a federal court located in North Carolina. While it may be somewhat inconvenient to defendants to litigate in this Court, the Court will not merely shift the inconvenience to plaintiff based on the sole fact that defendants are located in another state, and defendants have not met their burden to show that any inconvenience weighs strongly in favor of transferring venue to another court. The Court finds that defendants' motion to transfer venue (Dkt. # 21) should be denied.

## C.

Defendants ask the Court to dismiss plaintiff's claims due to plaintiff's failure to join a necessary party, and they argue that plaintiff's damages in this case are intertwined with plaintiff's contract with RRSat Global Communications Network, Ltd. (RRSat). Dkt. # 19, at 3. Plaintiff responds that it is seeking damages based only on its contract with LoveWorld TV and Christ Embassy, and RRSat will not be prejudiced if it is not joined as a party. Dkt. # 28, at 2-3. Defendants have submitted a copy of plaintiff's contract with RRSat, but that evidence will not be considered when the Court rules on defendants' motion to dismiss.[4]

A motion to dismiss for failure to join a necessary party falls under Fed. R. Civ. P. 12(b)(7). Defendants bear the burden to show that the absent party claims a non-frivolous interest that will be impaired if it is not joined as a party. Davis v. United States, 192 F.3d 951, 958 (10th Cir. 1999). Defendants' burden "can be satisfied by providing 'affidavits of persons having knowledge of these

---

[4] Defendants filed a motion to seal their Rule 19 motion (Dkt. # 19), because the RRSat contract had been provided to defendants as part of settlement negotiations. The Court granted the motion and advised the parties that the RRSat contract "is to be disregarded from the analysis of the subject Motion to Dismiss." Dkt. # 32.

interests as well as other relevant extra-pleading evidence.'" Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994). However, a motion to dismiss under Rule 12(b)(7) "will not be granted because of a vague possibility that persons who are not parties may have an interest in the action." Raytheon Co. v. Continental Cas. Co., 123 F. Supp. 2d 22, 32 (D. Mass. 2000). If the Court determines that the absent party is not a required party under Rule 19(a), it is not necessary for the Court to consider whether the case should be dismissed under Rule 19(b). Bank of America Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1053-54 (3d Cir. 1988).

Under Rule 19, a district court must determine (1) if the absent party is a "required" party and (2) if the required party is indispensable to the litigation. The Wilderness Society v. Kane County, Utah, 581 F.3d 1198, 1217-18 (10th Cir. 2009). A non-party must be joined as a required party if:

> (A) in the person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If a court determines that a non-party is a required party under Rule 19(a), the court must consider whether "in equity and good conscience" the case should proceed without the absent party or be dismissed. Sac & Fox Nation of Missouri v. Norton, 240 F.3d 1250, 1259 (10th Cir. 2001). Rule 19 provides four factors that a court must balance to make this determination:

18

>    (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
>    (2) the extent to which any prejudice could be lessened or avoided by :
>
>        (A) protective provisions in the judgment; or
>
>        (B) shaping the relief; or
>
>        (C) other measures;
>
>    (3) whether a judgment rendered in the person's absence would be adequate; and
>
>    (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). These factors must be applied in a "practical and pragmatic but equitable manner." Symes v. Harris, 472 F.3d 754, 759 (10th Cir. 2006).

Defendants argue that RRSat claims an interest in this case, because defendants could be subject to multiple or inconsistent liability if RRSat is not joined as a party. Dkt. # 19, at 4. However, there is no evidence in the record to support this claim. The Court has not reviewed plaintiff's contract with RRSat but, based on the parties' arguments, the Court will assume that plaintiff contracted with RRSat to provide certain services requested by defendants. However, there is no evidence suggesting that RRSat would have any right to recover against defendants. Instead, it appears that RRSat would have a right to recover from plaintiff if plaintiff were to breach its contract with RRSat. Plaintiff is not asking for defendants to pay damages for any amounts that plaintiff might owe to RRSat, and plaintiff has limited its claims for damages to amounts owed under the Agreement between plaintiff and defendants. Dkt. # 28, at 2. The Court can grant complete relief to plaintiff without joining RRSat as a party, and there is no risk that defendants will be subject to multiple or inconsistent liability. The Court has also reviewed the Agreement, and

19

there is no language that would authorize plaintiff to recover from defendants for amounts that it may owe to RRSat. The Court finds that RRSat is not a required party under Rule 19(a), and the case can proceed without requiring plaintiff to join RRSat as a party.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Brief to Support (Dkt. # 18) is **granted in part** and **denied in part**; defendants' motion is granted as to LoveWorld Limited and Christ Embassy Limited and they are dismissed as parties; defendants' motion is denied as to defendants LoveWorld TV and Christ Embassy.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of Defendants LoveWorld Limited and Christ Embassy Limited for Failure to State a Claim upon which Relief Can Be Granted and Brief in Support (Dkt. # 17) is **moot**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss for Failure to Join a Necessary Party and Brief in Support (Dkt. # 19), Defendants' Motion to Dismiss for Improper Venue and Brief in Support (Dkt. # 20), and Defendants' Motion to Transfer Venue and Brief in Support (Dkt. # 21) are **denied**.

**DATED** this 3rd day of December, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE